UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD BOWES, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>VENTURE GLOBAL, INC., MICHAEL SABEL, JONATHAN THAYER, ROBERT PENDER, SARAH BLAKE, SARI GRANAT, ANDREW OREKAR, THOMAS J. REID, JIMMY STATON, and RODERICK CHRISTIE,<br><br>                      Defendants. | Case No: 1:25-cv-01364<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

       Plaintiff Gerald Bowes alleges the following upon information and belief, except as to those allegations concerning themselves, which are alleged upon personal knowledge. Plaintiff's information and belief is based on the investigation of their undersigned counsel, which included, among other things, review and analysis of: (a) public statements made by or on behalf of Venture Global, Inc. ("Venture" or the "Company"), including public filings with the U.S. Securities and Exchange Commission ("SEC"); (b) press releases; and (c) information readily available on the internet, including news articles. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

    1.     Plaintiff brings this action pursuant to Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o, on behalf of himself and all other shareholders that purchased stock pursuant and/or traceable to Venture's registration statement for the initial public offering held on or about January 24, 2025.

1

2.      Venture introduced itself to investors during its initial public offering as having "reshaped the development and construction of liquefied natural gas production," establishing itself as "a rapidly growing company delivering critical LNG to the world." Venture describes its approach as "innovative and disruptive," which is "both scalable and repeatable," allowing Venture to bring LNG to the global market years faster and at a lower cost.

3.      In their initial public offering documents, Defendants discussed the commissioning, constructing, and developing of five natural gas liquefaction and export projects near the Gulf of Mexico in Louisiana, utilizing the Company's unique "design one, build many" approach. Venture further described each project as designed or being developed to include an LNG facility and associated pipeline systems that interconnect with several interstate and intrastate pipelines to enable the delivery of natural gas into the LNG facility. The Company shared the following table with major projects and their stages of development:

| Project Name | Number of Trains | Expected Nameplate Capacity | Expected Excess Capacity | Expected Peak Production Capacity | Stage of Development |
|---|---|---|---|---|---|
| Calcasieu Project | 18 | 10.0 mtpa | 2.4 mtpa$^{(1)}$ | 12.4 mtpa$^{(1)}$ | Commissioning |
| Plaquemines Project | 36 | 20.0 mtpa | 7.2 mtpa$^{(1)}$ | 27.2 mtpa$^{(1)}$ | Construction and Commissioning |
| CP2 Project | 36 | 20.0 mtpa$^{(2)}$ | 8.0 mtpa$^{(2)}$ | 28.0 mtpa$^{(2)}$ | Engineering, Procuring Materials, and Manufacturing Modules |
| CP3 Project | 54 | 30.0 mtpa$^{(2)}$ | 12.0 mtpa$^{(2)}$ | 42.0 mtpa$^{(2)}$ | Development |
| Delta Project | 44 | 24.4 mtpa$^{(2)}$ | 9.8 mtpa$^{(2)}$ | 34.2 mtpa$^{(2)}$ | Development |

4.      Venture completed its initial public offering on January 27, 2025, selling 70 million shares at $24.00 per share. On February 5, 2025, TotalEnergies, an energy company that was a target customer of Venture, rejected opportunities to become a long-term customer of Venture, citing lack of trust. In particular, TotalEnergies CEO, Patrick Pouyanne, stated that he was approached by Venture to see if the company would be interested in a long-term supply contract for liquefied natural gas from the Calcasieu Pass terminal in Louisiana, but he rejected the offer

"because of what they are doing." In response to the news, Venture's stock price declined from $19.68 per share on February 5, 2025 to $17.48 per share on February 6, 2025.

5.  Plaintiff and other similarly situated investors bought Venture stock in the initial public offering based on false and/or materially misleading information concerning its repeated confidence in the Company's ability to utilize its approach to deliver LNG to the world. These investors sustained damages as a result thereof. This action seeks to compensate those investors and recover the damages they sustained because of Defendants' actions and statements.

## JURISDICTION AND VENUE

6.  The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77o, respectively.

7.  This Court has subject matter jurisdiction over this action under Section 22 of the Securities Act (15 U.S.C. § 77v) and 28 U.S.C. § 1331.

8.  In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, and the facilities of the national securities exchange.

9.  Venue is proper in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the commencement and execution of Venture's initial public offering, occurred in this District.

## THE PARTIES

10. Plaintiff purchased Venture stock pursuant and/or traceable to Venture's registration statement for the initial public offering and was damaged as a result thereof. Plaintiff's certification evidencing his transaction(s) in Venture is incorporated herein by reference.

11. Defendant Venture is incorporated in the State of Delaware. Its principal executive offices are located at 1001 19th Street North, Suite 1500, Arlington, VA 22209. Venture conducted its initial public offering vis-à-vis numerous investment banks located in this District. Following its initial public offering, Venture's stock traded on the New York Stock Exchange (NYSE) under the symbol "VG."

12. Defendant Michael Sabel ("Sabel") was, at all relevant times, Venture's Chief Executive Officer, Director, Executive Co-Chairman of the Board, and Founder. Sabel signed Venture's registration statement for the initial public offering.

13. Defendant Jonathan Thayer ("Thayer") was, at all relevant times, Venture's Principal Financial Officer. Thayer signed Venture's registration statement for the initial public offering.

14. Defendant Robert Pender ("Pender") was, at all relevant times, Venture's Executive Co-Chairman, Director, and Founder. Pender signed Venture's registration statement for the initial public offering.

15. Defendant Sarah Blake ("Blake") was, at all relevant times, Venture's Principal Accounting Officer. Blake signed Venture's registration statement for the initial public offering.

16. Defendants Sari Granat, Andrew Orekar, Thomas J. Reid, Jimmy Staton, and Roderick Christie were at all relevant times members of Venture's Board of Directors. Collectively, these defendants are referred to as the "Director Defendants."

17. Sabel, Thayer, Pender, Blake, and the Director Defendants:

    a. directly participated in the management of Venture;

    b. were directly involved in the day-to-day operations of Venture at the highest levels;

4

   c. were directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein;

   d. were directly or indirectly involved in the oversight or implementation of Venture's business and/or finances, medical, or scientific research;

   e. and/or approved or ratified these statements in violation of the federal securities laws.

  18. As officers of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the federal securities laws of the United States, Sabel, Thayer, Pender, Blake and the Director Defendants each had a duty to disseminate prompt, accurate, and truthful information with respect to the Company's ability to maintain its status as a long-term, low-cost provider of American-produced LNG and to correct any previously-issued statements that had become materially misleading or untrue.

  19. Sabel, Thayer, Pender, Blake, and the Director Defendants, because of their positions with Venture, possessed the power and authority to control the contents of Venture's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Sabel, Thayer, Pender, Blake, and the Director Defendants had the ability and opportunity to prevent their issuance or cause them to be corrected.

## **SUBSTANTIVE ALLEGATIONS**

  20. On January 23, 2025, Venture published a press release announcing pricing for its initial public offering, stating, in pertinent part:

> [Venture] announced today the pricing of its initial public offering of 70,000,000 shares of its Class A common stock, par value $0.01 ("Class A common stock") at a public offering price of $25.00 per share. In connection with the offering, Venture Global has granted the underwriters a 30-day option to purchase up to an additional 10,500,000 shares of Class A common stock. The shares of Class A common stock are expected to begin trading on the New York Stock Exchange on January 24, 2025 under the symbol "VG".
>
> The closing of the offering is expected to occur on January 27, 2025, subject to the satisfaction of customary closing conditions.

21.     On January 27, 2025, Venture published a Form 8-K announcing that its initial public offering had closed. Defendant Thayer signed this statement, which also included a second amended and restated certificate of incorporation, amended and restated by-laws, and amended and restated shareholders' agreement.

## FALSE AND MATERIALLY MISLEADING STATEMENTS

22.     On December 20, 2024, Defendants filed a registration statement on Form S-1 with the SEC in connection with the Company's initial public offering. Venture amended the registration statement on January 13, 2025 and January 22, 2025. On January 24, 2025, Venture filed its final prospectus for the Company's initial public offering, which was incorporated into the registration statement, and listed for sale 70 million shares of Venture common stock at an offering price of $25.00 per share.

23.     Venture's final prospectus for the initial public offering represented the significance and benefits of Venture's fundamental reshaping of the development and construction of liquefied natural gas (LNG) production and the Company's ability to deliver LNG to the world. In pertinent part, the Company detailed its projects as follows:

> We are commissioning, constructing, and developing five natural gas liquefaction and export projects near the Gulf of Mexico in Louisiana, utilizing our unique "design one, build many" approach. Each project is designed or is being developed to include an LNG facility and associated pipeline systems that interconnect with

6

several interstate and intrastate pipelines to enable the delivery of natural gas into the LNG facility. As illustrated by the chart below, our five current projects are being designed to deliver a total expected peak production capacity of 143.8 mtpa, which consists of an aggregate of 104.4 mtpa expected nameplate capacity and an aggregate of 39.4 mtpa of expected excess capacity. These amounts do not account for any potential bolt-on expansion liquefaction capacity. The expected nameplate capacity of our facilities measures the minimum operating performance thresholds guaranteed by the equipment providers, and the expected excess capacity represents the additional LNG that we aim to produce above such guaranteed amounts. Although COD has not yet occurred under the post-COD SPAs for any of our projects, we have been generating proceeds from the sale of commissioning cargos at the Calcasieu Project since the first quarter of 2022, and expect to do so at each of our other projects during commissioning prior to achieving COD for the relevant project or phase of a project.

| Project Name | Number of Trains | Expected Nameplate Capacity | Expected Excess Capacity | Expected Peak Production Capacity | Stage of Development |
|---|---|---|---|---|---|
| Calcasieu Project | 18 | 10.0 mtpa | 2.4 mtpa$^{(1)}$ | 12.4 mtpa$^{(1)}$ | Commissioning |
| Plaquemines Project | 36 | 20.0 mtpa | 7.2 mtpa$^{(1)}$ | 27.2 mtpa$^{(1)}$ | Construction and Commissioning |
| CP2 Project | 36 | 20.0 mtpa$^{(2)}$ | 8.0 mtpa$^{(2)}$ | 28.0 mtpa$^{(2)}$ | Engineering, Procuring Materials, and Manufacturing Modules |
| CP3 Project | 54 | 30.0 mtpa$^{(2)}$ | 12.0 mtpa$^{(2)}$ | 42.0 mtpa$^{(2)}$ | Development |
| Delta Project | 44 | 24.4 mtpa$^{(2)}$ | 9.8 mtpa$^{(2)}$ | 34.2 mtpa$^{(2)}$ | Development |

24. The statements identified above were false and/or materially misleading. Defendants touted its innovative and disruptive approach, which they stated is both scalable and repeatable, allowing the Company to bring LNG to the global market years faster and at a lower cost. Defendants further discussed the development of Venture's five natural gas liquefaction and export projects near the Gulf of Mexico in Louisiana, utilizing their unique "design one, build many" approach. Therefore, the initial public offering represented to the public that Venture had the customer backing to implement its projects, allowing for the Company to deliver LNG to the world.

25. Contrary to these representations, Venture's business and prospects were called into question when TotalEnergies CEO, Patrick Pouyanne, announced that he had been approached by Venture see if the company would be interested in a long-term supply contract for liquefied natural gas from the Calcasieu Pass terminal in Louisiana, but rejected the offer. According to new

reports, Pouyanne stated in pertinent part that: "I don't want to deal with these guys, because of what they are doing. . . . I don't want to be in the middle of a dispute with my friends, with Shell and BP." Pouyanne also cited a lack of trust with respect to Venture. According to Pouyanne, "The price of the LNG was so low . . . I said to my colleague, 'How is it possible to pay $1 less than the rest of the market? What is the trick?'"

26. Venture is currently facing legal challenges from existing large clients, such as BP and Shell, due to delays in supply contracts as Venture commissions its projects. Given the fact that Defendants ability to deliver LNG to the world and to continue development of Venture's five natural gas liquefication and export projects depends on customer contracts, such as those mentioned above, Defendants' failure to account for and address these issues caused statements in Venture's registration statement to be false and/or materially misleading at the time of the initial public offering.

27. In response to the news, Venture's stock price declined from $19.68 per share on February 5, 2025 to $17.48 per share on February 6, 2025.

28. Venture's stock currently trades at or around $16.00 per share, which is well below its $25.00 per-share initial public offering price.

## CLASS ACTION ALLEGATIONS

29. Plaintiff bring this action on behalf of himself and all other shareholders that purchased stock pursuant and/or traceable to Venture's registration statement for the initial public offering held between January 24 and 27, 2025 and were damaged thereby (the "Class"). Excluded from the Class are Defendants, each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants have or had a controlling interest.

30. The Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other Class members may be identified from records maintained by Venture or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. In the initial public offering itself, Venture sold 70 million shares. Upon information and belief, these shares are held by hundreds or thousands of individuals located throughout the world. Joinder would be highly impracticable.

31. Plaintiff's claims are typical of the claims of the Class members as all Class members are similarly affected by the Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

32. Plaintiff has and will continue to fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class and securities litigation. Plaintiffs has no interests antagonistic to or in conflict with those of the Class.

33. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

   (a) whether the federal securities laws were violated by the Defendants' respective acts as alleged herein;

   (b) whether the price of Venture's securities during the initial public offering was artificially inflated because of the Defendants' conduct complained of herein; and

(c) whether the Class members have sustained damages and, if so, what is the proper measure of damages.

34. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action

## COUNT I

**Violation of Section 11 of the Securities Act against Defendants**

35. Plaintiff specifically disclaims any allegations that are based on fraud, recklessness, or intentional misconduct.

36. This count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of Plaintiff and other members of the Class against Defendants.

37. Venture's registration statement and prospectus for the initial public offering were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

38. Venture is the issuer of the securities purchased by Plaintiff and other members of the Class. As such, Venture is strictly liable for the materially untrue statements contained in the registration statement and prospectus and their failure to be complete and accurate.

39. Sabel, Thayer, Pender, Blake, and the Director Defendants each signed the registration statement filed by Venture for its initial public offering. As such, each is strictly liable for the materially inaccurate statements contained therein and the failure of the registration

statement and prospectus to be complete and accurate. Sabel, Thayer, Pender, Blake, and the Director Defendants named herein were responsible for the contents and dissemination of the registration statement and prospectus, which were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein. Sabel, Thayer, Pender, Blake, and the Director Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the registration statement and prospectus and ensure that they were true and accurate and not misleading. In the exercise of reasonable care, Sabel, Thayer, Pender, Blake, and the Director Defendants should have known of the material misstatements and omissions contained in the registration statement and prospectus. Accordingly, Sabel, Thayer, Pender, Blake, and the Director Defendants are liable to Plaintiffs and the other members of the Class.

40. By reason of the conduct alleged herein, Defendants violated Section 11 of the Securities Act.

41. Plaintiff and the other members of the Class acquired Venture common stock pursuant or traceable to the Company's registration statement and prospectus filed in conjunction with the initial public offering and without knowledge of the untruths and/or omissions alleged herein. Plaintiff and the other members of the Class sustained damages, and the price of Venture's shares declined substantially due to material misstatements in the registration statement and prospectus.

42. This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the initial public offering.

43. By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under Section 11, as measured by the provisions of Section 11(e), from the Defendants and each of them, jointly and severally.

## COUNT II

**Violation of Section 15 of the Securities Act
against Sabel, Thayer, Pender, Blake, and the Director Defendants**

44. Plaintiff repeats and realleges each and every allegation contained in Count I, *supra*. Plaintiff specifically disclaims any allegations that are based on fraud, recklessness, or intentional misconduct.

45. This Count is brought by Plaintiff against Sabel, Thayer, Pender, Blake, and the Director Defendants pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class.

46. This Count is asserted against Sabel, Thayer, Pender, Blake, and the Director Defendants, each of whom possessed the power to control, and did control, directly and/or indirectly, the actions of Venture at all relevant times.

47. Sabel, Thayer, Pender, Blake, and the Director Defendants were each control persons of Venture by virtue of their positions as directors, senior officers, and/or authorized representatives of the Company. Sabel, Thayer, Pender, Blake, and the Director Defendants had the power and authority to control the contents of Venture's registration statement and prospectus and had the ability and opportunity to prevent their issuance or cause them to be corrected.

48. As a direct and proximate result of said wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchase of Venture securities.

49. This claim is brought within the applicable statute of limitations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action, certifying Plaintiff as a class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial of all issues involved, now, or in the future, in this action.

Dated: February 17, 2025                    Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff*